IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIGNATURE FINANCIAL LLC,, <br><br> Plaintiff, <br><br> vs. <br><br> YASYA SHTAYNER, SEMYON SHTAYNER, 2ND AVENUE TAXI CORP., 3 ANGELS CAB CORP., 3RD AVENUE TAXI CORP., 6TH AVENUE TAXI CORP., 7TH AVENUE TAXI CORP., 8TH AVENUE TAXI CORP., 9TH AVENUE TAXI CORP., ASHLAND AVENUE TAXI CORP., ASPIRE CAB CORP., CARROLL AVENUE TAXI CORP., EMPIRE TAXI INCORPORATED, GREY GOOSE CAB CO., HANDY CAB TAXI CORP., LEXINGTON TAXI CORP., MADISON TAXI CORP., MONSOON TAXI CORP., RIVERSIDE TAXI CORP., SAM & SONS TAXI CORP., SECOND CITY TAXI CORP., STOLI CAB CO., WEST END TAXI CORP., and YORK AVENUE TAXI CORP., <br><br> Defendants. | Case No. 18-cv-04676 <br><br> JUDGE: Hon. Gary Feinerman <br><br> MAGISTRATE: Hon. David Weisman |

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S DECLARATIONS IN SUPPORT OF SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR LEAVE TO CONDUCT DISCOVERY AS TO DAMAGES

Each of the captioned Defendants ("***Defendants***") respectfully requests that the Court enter an Order (a) striking all, or certain parts, of the Declarations submitted in support of Plaintiff's Motion for Summary Judgment or, in the alternative, (b) granting Defendants' Leave to Conduct Discovery as to the Issue of Damages, and in support of such relief state as follows.

## INTRODUCTION

On November 30, 2018, Plaintiff filed its motion for summary judgment (Dkt. No. 30) (the "***SJMotion***"). The time for Defendants to respond to the SJMotion was

extended to January 14, 2019. The SJMotion is accompanied by a Statement of Uncontested Material Facts in Support of Summary Judgment ("***Plaintiff's Rule 56.1 Statement***") pursuant to Local Rule 56.1, one Declaration of an employee of Plaintiff (the "***Plaintiff's Declaration***"), as well as a Declaration from Plaintiff's counsel pertaining to attorneys' fees (the "***Fee Declaration***").[1] Plaintiff's Declaration should be stricken because it is a conclusory document that fails to provide an appropriate factual foundation for granting summary judgment and because the Declarant has not established that he is competent to testify about the matters set forth in Plaintiff's Declaration. The Fee Declaration should be stricken because it does not attach detailed time records sufficient to make a judgment about whether the fees requested are reasonable.

To the extent the Court does not strike Plaintiff's Declaration, as an alternative, the Court should permit Defendants to conduct discovery into the amount Plaintiff claims it is owed. There has been no discovery taken or provided in this Case thus far because Plaintiff filed its SJMotion shortly after Defendants answered the Complaint and the Parties have not yet served their MIDP disclosures due to consensual extensions. Allowing discovery is appropriate because of the issues discussed below and because Plaintiff will not suffer any prejudice from discovery, whereas the prejudice to Defendants will be substantial.

## I.     PLAINTIFF'S DECLARATIONS SHOULD BE STRICKEN.

### A.     A Declaration must meet certain criteria to support a motion for summary judgment.

Rule 56(c) governs affidavits or declarations accompanying motions for summary judgment, and a party can move to strike portions of an affidavit or declaration that do not comply with the Rule. *See* FED. R. CIV. P. 56(c). *In re KJK Constr. Co.*, 414 B.R. 416, 429 (Bankr. N.D. Ill. 2009). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits

---

[1] Copies of the Declarations, without Exhibits are attached as Exhibit 1.

that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of DuPage,* 715 F.2d 1238, 1243 (7th Cir. 1983), *cert. denied,* 465 U.S. 1006, 79 L. Ed. 2d 232, 104 S. Ct. 1000 (1984). *See also Lujan v. National Wild Life Fed'n,* 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990) ("the object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

**B.   Paragraphs 49 and 50 of Plaintiff's Declaration should be stricken because they are conclusory statements without adequate foundation.**

Plaintiff's Declaration in support of summary judgment suffers from numerous defects, particularly related to the amount of damages Plaintiff claims it is owed. It is rife with conclusory allegations that are not supported by specific facts, which renders it ineffective to grant summary judgment. *Davis v. Chicago*, 841 F.2d 186, 189 (7th Cir. 1988)

For example, ¶ 49 of Plaintiff's Declaration, which is the only allegation related to the amount of damages, states in a conclusory fashion (i.e., without any supporting records or other facts) that "[a]s of July 3, 2018, the total amount of past due principal, accrued interest, and late fees due under each Loan is no less than as follows…." The Declaration then proffers the following summary chart in which the rows are the particular defendant and the amount that defendant allegedly owes:

| Borrower | Amount Due |
|---|---|
| 2nd Avenue Taxi Corp. | $1,757,669.00 |
| 3 Angels Cab Corp. | $1,504,452.70 |
| 3rd Avenue Taxi Corp. | $1,757,699.00 |
| 6th Avenue Taxi Corp. | $1,504,452.70 |
| 7th Avenue Taxi Corp. | $1,504,452.70 |
| 8th Avenue Taxi Corp. | $1,504,452.70 |
| 9th Avenue Taxi Corp. | $1,757,699.00 |
|  |  |
| Ashland Avenue Taxi Corp. | $1,000,803.98 |
| Aspire Cab Corp. | $998,203.59 |
| Carroll Avenue Taxi Corp. | $748,779.65 |
| Empire Taxi Incorporated | $2,011,501.78 |

| | |
|---|---|
| Grey Goose Cab Co. | $1,252,295.44 |
| Handy Cab Taxi Corp. | $476,802.02 |
| Lexington Taxi Corp. | $1,254,830.64 |
| Madison Taxi Corp. | $1,254,830.64 |
| Monsoon Taxi Corp. | $1,254,830.64 |
| Riverside Taxi Corp | $1,000,103.75 |
| Sam & Sons Taxi Corp. | $1,251,741.71 |
| Second City Taxi Corp. | $1,251,741.71 |
| Stoli Cab Co. | $1,251,741.71 |
| West End Taxi Corp. | $2,014,371.16 |
| York Avenue Taxi Corp. | $717,388.83 |
| | |

Paragraph 50 adds up these amounts and concludes that "the total aggregate amount of past due principal, unpaid interest and late fees owed by each Guarantor, jointly and severally, pursuant to the Guaranty Agreements is no less than $29,030,291.41, exclusive of continuing interest, certain costs, fees and expenses, including without limitation, attorneys' fees and costs."

The Plaintiff's Declaration provides no detail on where this information comes from, whether it was within the Declarant's personal knowledge or whether it was based on some business record. The amounts owed are summary figures only that do not separately itemize the interest, the principal and the other charges that aggregate the total. Plaintiff's Declaration also does not attach a loan history or other report to provide the factual basis for the amounts owed. Equally problematic, is that the Declaration states that "[t]hese amounts do not include late fees or the Lender's reasonable attorneys' fees and collection costs, which are contractually recoverable under the Loan Documents." *See e.g., PNC Bank, NA v. OHCMC-Oswego*, No. 11 C 301, 2012 U.S. Dist. LEXIS 3116, at *9 (N.D. Ill. Jan. 11, 2012) (denying summary judgment on attorneys' fees and late fees because amounts were not set forth in original affidavit).

It is well established that conclusory statements in an affidavit or declaration as to the amounts owed, like those in Plaintiff's Declaration, are not sufficient to establish the absence of a material fact for purposes of summary judgment. In *AEL Fin., LLC v. Hunt Club Pediatric Assocs., P.A.,* No. 11 C 9052, 2012 U.S. Dist. LEXIS 179808, at *7-8

(N.D. Ill. Dec. 20, 2012) (Kennelly, J.), this Court denied summary judgment to a lessor on the grounds that the affidavit in support of summary judgment was, like here, too conclusory as to the issue of the amount owed. Like here, the affidavit merely set forth amounts owed and did not provide any facts regarding how those amounts were calculated. Indeed, the affidavit in *AEL*, which was defective for summary judgment purposes, was far more specific than Plaintiff's Declaration here. In *AEL* the affidavit at least broke down the different element of damages, which did not occur here. In denying summary judgment, this Court observed:

> Under Rule 56(c), affidavits supporting and opposing motions for summary judgment must do more than present admissible evidence—namely, they must "set out facts." Fed. R. Civ. P. 56(c); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("Admissibility does not imply utility."). "Reliable inferences depend on more than say-so, whether the person doing the saying is a corporate manager or a putative expert." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

*Id.*

Similarly, in *Schmidt v. Campanella Sand & Gravel Co.*, the Court denied summary judgment on the amount owed by the defendant because plaintiff's affidavit merely recited conclusory amounts and did not contain specific facts as to how those amounts were calculated, reasoning that:

> Summary judgment on the amount of money owed cannot be granted. Schmidt offers no admissible evidence to establish this amount. His affidavit includes claims regarding the amount owed, but does not establish the basis for those figures. Conclusory allegations in an affidavit are insufficient for purposes of summary judgment. *Drake v. Minnesota Mining & Manufacturing Company*, 134 F.3d 878, 887 (7th Cir. 1998) (Rule 56 requires "affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted").

No. 00 C 6123, 2001 U.S. Dist. LEXIS 11374, at *8 n.2 (N.D. Ill. July 25, 2001). *See also*

*Chi. Tile Inst. Welfare Fund v. Picha Tile Corp.*, No. 93 C 4473, 1995 U.S. Dist. LEXIS 14406, at *23-24 (N.D. Ill. Sep. 28, 1995) ("Plaintiffs' conclusory statement regarding the interest owed is also insufficient to award summary judgment. The Court has been provided with no information regarding how the interest was calculated, or at what rate."); *Banco Panamericano, Inc. v. Consortium Serv. Mgmt. Grp.*, No. 07 C 15, 2008 U.S. Dist. LEXIS 75326, at *30 (N.D. Ill. Aug. 26, 2008) ("The court concludes that there is a genuine issue of material fact as to the proper calculation of Banco's damages under the Note. Consequently, summary judgment on the amount of damages owed would be improper.").[2]

In this case, Plaintiff provides only conclusory statements. It does not explain where its damages numbers come from, nor does it even break out the amount of principal and interest or explain the basis for the interest calculation and whether it was done in accordance with the loan documents. Neither the Court, nor Defendants, know whether interest was compounded, or simple, or the rate of interest (not default or default), or how payments were applied.

If this matter proceeded to trial, Plaintiff's witness would not be able to take the stand and merely state in a conclusory fashion that the Total Indebtedness is $29,030,000, and yet that is what Plaintiff attempts to do through the Plaintiff's Declaration. Such testimony would be objectionable because it lacks any foundation. For that reason, paragraphs 49 and 50 of Plaintiff's Declaration should be stricken.

---

[2] *See also Wells Fargo Bank, N.A. v. Premier Hotels Grp., LLC*, 2017 PA Super 405, 177 A.3d 248, 253 (reversing grant of summary judgment to lender and reasoning because "[t]he 'proof' of the claimed amount here was based on the Farr Affidavit and its affiant's assertion that he determined the amounts due based on his review of the voluminous loan payment records. Farr Affidavit at ¶¶ 41-42. We agree with Premier's contention that the unsupported statements in the Farr Affidavit fall woefully short of providing proof to a reasonable certainty as to the existence of amounts claimed to be owed.")

### C.    Signature has not established that its Declarant has the requisite level of knowledge.

Plaintiff's Declaration also is defective because it fails to provide a proper foundation for the Declarant's statements.  The Declaration alleges the Declarant is qualified to provide the required testimony because in a conclusory fashion the Declarant alleges:

> I am fully familiar with the facts and circumstances set forth herein and, except where otherwise indicated, the facts set forth herein are based upon my personal knowledge given my involvement with the matters herein described and my review of the Lender's books and records, which are regularly made in the ordinary course of business by individuals with knowledge of same, and publicly available information.  As to facts stated upon information and belief, I believe them to be true.

The Declarant's conclusory statements regarding the foundation for his knowledge are lacking in material respects.  *See generally* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").  In *Davis v. Chicago*, 841 F.2d 186, 189 (7th Cir. 1988), the affiant testified regarding a factual matter – i.e., the City of Chicago's procedures – but the Seventh Circuit ruled that the affiant's testimony should not have been considered for purposes of summary judgment because there was no specific evidence provided to lay a foundation for his knowledge.  According to the Circuit, "Rule 602 mandates that '[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter.' Davis' conclusory assertion, unsubstantiated with any specific facts, fails to indicate any factual basis which would tend to show that he had personal knowledge of the matter." *Id.*

Rule 602 thus requires some form of admissible *evidence* that the witness has personal knowledge.  And evidence does not consist of a conclusory statement that the statements are based upon the Declarant's personal knowledge.  The Declarant does not identify which of the Lender's "books and records" he reviewed to reach the

conclusions he makes or what other steps he took to gain personal knowledge. There is thus no evidence to support a finding that the witness has personal knowledge of the matter, which Rule 602 requires. The Declaration also does not attach any payment histories (which would potentially be business records) or other materials showing how the Declarant obtained the information to state the amount owed. *Martin v. Indiana*, No. 1:12-cv-69-SLC, 2015 U.S. Dist. LEXIS 107808, at *22 (N.D. Ind. Aug. 17, 2015) ("Ultimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief' cannot be utilized on a summary judgment motion.") (citing *Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 162 n.3 (7th Cir. 1987).

The Declarant also offers no specific facts about his job duties and responsibilities and how he became "fully familiar with the facts and circumstances set forth" in the Declaration, particularly those related to the amount owed. Again, Plaintiff's Declaration merely contains conclusory statements about such matters that, as discussed above, are not sufficient for purposes of a summary judgment affidavit or declaration.

And although the Declarant states that he is a Director of Portfolio Management, no information is provided about the job duties and responsibilities of a Director of Portfolio Management. It is not known whether a Director of Portfolio Management reviews the relevant loan files once a year, or once a week, or who that person supervises or what they review as part of their job responsibilities.

Absent such evidence, the Declaration is defective and should be stricken in its entirety because the Declarant has not established a foundation that he is competent to testify about such matters. *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 613 n.4 (N.D. Ill. 2011) ("Fed.R.Civ.P. 56(e)(1) requires that affidavits opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."). *See also* Fed. R. Evid. 602.

**D.     The exhibits to the Declaration and the corresponding paragraphs should be stricken because they have not been authenticated.**

Plaintiff's Declaration contains multiple paragraphs that rely upon the Loan

Documents that are attached to Plaintiff's Declaration. (*See* Plaintiff's Declaration, ¶¶ 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 39, 40, 42). The foregoing paragraphs should be stricken because Plaintiff has not established the authenticity of such documents. *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) ("However, Marsh's report was introduced into the record without any supporting affidavit verifying its authenticity and is therefore inadmissible and cannot be considered for purposes of summary judgment.").

Normally, to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit or declaration sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records.[3] *Woods v. City of Chi.*, 234 F.3d 979 (7th Cir. 2000).

Plaintiff's Declaration does not establish a business-records foundation for the documents attached to it. There is no allegation that the Declarant is the custodian of records, or that he has knowledge of the manner in which Plaintiff stores its records. Absent such evidence or information, the Declarant is not competent to testify about Plaintiff's business records. Other than the conclusory statement that the Declarant is familiar with the facts set forth in the Declaration based upon his "review of the Lender's books and records, which are regularly made in the ordinary course of business by individuals with knowledge of same," Plaintiff does not attach a declaration

---

[3] Fed. R. Evid. 803 provides that: (6) *Records of a regularly conducted activity.* A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. USCS Fed Rules Evid R 803

from a custodian of records or show how the Declarant otherwise qualifies as such a person.

Instead, like Plaintiff's Complaint, the Declaration merely recites that the documents are "true and correct copies," but does not explain how that is the case. As discussed above, a Rule 56 declaration cannot merely parrot the allegations in the complaint but must provide specific facts establishing the matter at issue. Plaintiff has failed to do that through the Plaintiff's Declaration and thus the documents attached to the Declaration should be stricken, as should the paragraphs that rely upon such documents. *See generally Citibank, N.A. v. Wilbern*, No. 12 C 755, 2014 U.S. Dist. LEXIS 43975, at \*16-17 (N.D. Ill. Mar. 28, 2014) ("Negron's affidavit makes no mention of the Notice of Default letter, and Plaintiff provides no other affidavit to authenticate it. No witness provides a basis for the conclusion that it was mailed in the regular course of the lender or loan servicer's business. As a result, the court grants Defendants' motion to strike the Plaintiff's Exhibit 6, the Notice of Default letter.").

**E.      There is a material factual issues as to the amount of the Total Indebtedness because the Declaration does not even calculate this amount.**

The SJMotion and Plaintiff's Declaration request a judgment in the amount of the so-called "Total Indebtedness." The Total Indebtedness is the conclusory amounts set forth in the chart in paragraphs 49 and 50, plus "continuing interest [in an unknown amount], certain costs [in an unknown amount and type], fees and expenses, including, without limitation, attorneys' fees and costs [in an unknown amount]." In other words, Plaintiff wants a judgment in an amount that Plaintiff has not even calculated. For this reason alone, paragraphs 49 and 50 of the Declaration should be stricken. Absent the allegation in these paragraphs, Plaintiff is not entitled to summary judgment.

**F.      The Declaration related to Attorneys' Fees should be Stricken because it is Conclusory.**

Plaintiff also submits a declaration from its counsel related to the request for attorneys' fees. This declaration should be stricken because it does not provide any time detail or time description or time itemization to enable the Court or Defendants to ascertain the reasonableness of the requested fees. The declaration also contains an

impermissible opinion from counsel.

## II.  ALTERNATIVELY, DEFENDANTS SHOULD BE GRANTED LEAVE TO CONDUCT DISCOVERY ON THE AMOUNT OWED.

Federal Rule of Civil Procedure 56(f), specifies that a party that opposes summary judgment may be granted leave to take discovery to support the opposition if the non-moving party submits an affidavit or declaration demonstrating that further discovery is needed to oppose the motion.  Fed. R. Civ. P. 56(f).  "Rule 56(f) is intended as a safeguard against a premature grant of summary judgment … thus we should construe the rule liberally and not find violations on rigid technical grounds." *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994).

To the extent the Court does not strike Plaintiff's Declaration and deny summary judgment, Defendants should be granted leave to conduct discovery of Plaintiffs as to the amounts owed and the application of payments.  First, no discovery has been served or taken in this case.  Plaintiff moved for summary judgment shortly after Defendants answered the Complaint.  Defendants did not immediately serve discovery because they were hoping to resolve this suit and thus the parties sought and obtained extensions on the submission of MIDP Disclosures, which are a pre-requisite to commencing discovery.  Furthermore, in reviewing the extensive documents submitted in support of summary judgment, as well as the documents not submitted, discovery is needed to ascertain the amount owed to Plaintiff.

Furthermore, contemporaneous with the filing of this Motion, Defendant have filed the Declaration of Semyon Shtayner, which identifies the need for discovery regarding Plaintiffs' claims, particularly because single payments were made to Signature Financial and none of its summary judgment papers indicate how those payments were allocated.  Discovery into this issue is thus needed.

Furthermore, Plaintiff's own papers in support of summary judgment are contradictory, which provides another reason to allow discovery to the extent summary judgment is not denied.  In paragraph 51 of Plaintiff's Statement of Uncontested Material Facts, Plaintiff states that no payments have been made on the subject loans since their inception, and yet paragraph 44 of the same document indicates that

payments were made at least through February of 2018. Semyon Shtayner's Declaration, which includes a spreadsheet showing the payment history to Signature shows payments were made as late as April of 2018.

Given the conflicting information, summary judgment should be denied, or, at a minimum, Defendants should be granted leave to take discovery on the amount owed. This information is uniquely in the hands of Signature and Defendants should be granted leave to obtain it, to the extent summary judgment is not denied. *Lekkas v. Mitsubishi Motors Corp.*, No. 97 C 6070, 2000 U.S. Dist. LEXIS 12016, at *5 (N.D. Ill. Aug. 15, 2000) (citing *Reid v. New Hampshire*, 56 F.3d 332, 342 (1st Cir. 1995) ("When a party who opposes a Rule 56(f) motion has control of the requested information, this factor "weighs heavily in favor of relief under Rule 56(f).");

WHEREFORE, Yasya Shtayner, Semyon Shtayner, 2nd Avenue Taxi Corp., 3 Angels Cab Corp., 3rd Avenue Taxi Corp., 6th Avenue Taxi Corp., 7th Avenue Taxi Corp., 8th Avenue Taxi Corp., 9th Avenue Taxi Corp., Ashland Avenue Taxi Corp., Aspire Cab Corp., Carroll Avenue Taxi Corp., Empire Taxi Incorporated, Grey Goose Cab Co., Handy Cab Taxi Corp., Lexington Taxi Corp., Madison Taxi Corp., Monsoon Taxi Corp., Riverside Taxi Corp., Sam & Sons Taxi Corp., Second City Taxi Corp., Stoli Cab Co., West End Taxi Corp., and York Avenue Taxi Corp. respectfully request the entry of an Order striking Plaintiff's entire Declarations or, in the alternative, striking paragraph 49 and 50, or, in the further alternative, granting Defendants leave to take discovery on the issue of damages.

Respectfully Submitted,

By:/s/William J. Factor
Counsel for the Defendants

William J. Factor (6205675)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:     (312) 878-6976
Fax:     (847) 574-8233
Email: wfactor@wfactorlaw.com
        jpaulsen@wfactorlaw.com

Exhibit 1 - Plaintiff's Declarations

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SIGNATURE FINANCIAL LLC, | |
| Plaintiff, | |
| v. | No. 1:18-cv-04676 |
| YASYA SHTAYNER, SEMYON SHTAYNER, 2ND AVENUE TAXI CORP., 3 ANGELS CAB CORP., 3RD AVENUE TAXI CORP., 6TH AVENUE TAXI CORP., 7TH AVENUE TAXI CORP., 8TH AVENUE TAXI CORP., 9TH AVENUE TAXI CORP., ASHLAND AVENUE TAXI CORP., ASPIRE CAB CORP., CARROLL AVENUE TAXI CORP., EMPIRE TAXI INCORPORATED, GREY GOOSE CAB CO., HANDY CAB TAXI CORP., LEXINGTON TAXI CORP., MADISON TAXI CORP., MONSOON TAXI CORP., RIVERSIDE TAXI CORP., SAM & SONS TAXI CORP., SECOND CITY TAXI CORP., STOLI CAB CO., WEST END TAXI CORP., and YORK AVENUE TAXI CORP., | JUDGE: Hon. Gary Feinerman  MAGISTRATE: Hon. David Weisman |
| Defendants. | |

**DECLARATION OF DAVID MCGOWAN IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT**

DAVID MCGOWAN hereby declares pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Director of Portfolio Management at plaintiff Signature Financial LLC ("Signature," "Plaintiff," or the "Lender").

2. I respectfully submit this declaration, pursuant to 28 U.S.C. § 1746, in support of the Lender's motion for summary judgment as to its claims for breach of certain loan documents and related guaranty agreements against defendants Yasya Shtayner ("Yasya"), Semyon Shtayner ("Semyon," and collectively with Yasya, the "Guarantors," and each a "Guarantor"), 2nd Avenue

1

Taxi Corp. ("2nd Avenue"), 3 Angels Cab Corp. ("3 Angels"), 3rd Avenue Taxi Corp. ("3rd Avenue"), 6th Avenue Taxi Corp. ("6th Avenue"), 7th Avenue Taxi Corp. ("7th Avenue"), 8th Avenue Taxi Corp. ("8th Avenue"), 9th Avenue Taxi Corp. ("9th Avenue"), Ashland Avenue Taxi Corp. ("Ashland Avenue"), Aspire Cab Corp. ("Aspire"), Carrol Avenue Taxi Corp. ("Carrol Avenue"), Empire Taxi Incorporated ("Empire"), Grey Goose Cab Co. ("Grey Goose"), Handy Cab Taxi Corp. ("Handy Cab"), Lexington Taxi Corp. ("Lexington"), Madison Taxi Corp. ("Madison"), Monsoon Taxi Corp. ("Monsoon"), Riverside Taxi Corp. ("Riverside"), Sam & Sons Taxi Corp. ("Sam & Sons"), Second City Taxi Corp. ("Second City"), Stoli Taxi Corp. ("Stoli"), West End Taxi Corp. ("West End"), and York Avenue Taxi Corp. ("York Avenue," and collectively with 2nd Avenue, 3 Angels, 3rd Avenue, 6th Avenue, 7th Avenue, 8th Avenue, 9th Avenue, Ashland Avenue, Aspire, Carrol Avenue, Empire, Grey Goose, Handy Cab, Lexington, Madison, Monsoon, Riverside, Sam & Sons, Second City, Stoli, and West End, the "Borrowers" and each "Borrower," and collectively with the Guarantors, the "Defendants" and each a "Defendant") and the Defendants' affirmative defenses.

3. I am fully familiar with the facts and circumstances set forth herein and, except where otherwise indicated, the facts set forth herein are based upon my personal knowledge given my involvement with the matters herein described and my review of the Lender's books and records, which are regularly made in the ordinary course of business by individuals with knowledge of same, and publicly available information. As to facts stated upon information and belief, I believe them to be true.

4. The Lender is a New York limited liability company. The Lender's sole member is Signature Bank, a bank chartered and incorporated in the State of New York. The Lender's

principal place of business is located in New York, New York, and the Lender is a citizen of the State of New York.

5.     On September 3, 2015, the Lender and each of the Borrowers entered into separate loan agreements, pursuant to which the Lender provided loans (collectively herein, the "Loans" and each a "Loan") to the Borrowers in the following principal amounts:

| Borrower | Original Principal Amount of Loan |
|----------|-----------------------------------|
| 2nd Avenue Taxi Corp. | $1,750,000.00 |
| 3 Angels Cab Corp. | $1,500,000.00 |
| 3rd Avenue Taxi Corp. | $1,750,000.00 |
| 6th Avenue Taxi Corp. | $1,500,000.00 |
| 7th Avenue Taxi Corp. | $1,500,000.00 |
| 8th Avenue Taxi Corp. | $1,500,000.00 |
| 9th Avenue Taxi Corp. | $1,750,000.00 |
| Ashland Avenue Taxi Corp. | $1,000,000.00 |
| Aspire Cab Corp. | $1,000,000.00 |
| Carroll Avenue Taxi Corp. | $  750,000.00 |
| Empire Taxi Incorporated | $2,000,000.00 |
| Grey Goose Cab Co. | $1,250,000.00 |
| Handy Cab Taxi Corp. | $   479,921.30 |
| Lexington Taxi Corp. | $1,250,000.00 |
| Madison Taxi Corp. | $1,250,000.00 |
| Monsoon Taxi Corp. | $1,250,000.00 |
| Riverside Taxi Corp. | $1,000,000.00 |
| Sam & Sons Taxi Corp. | $1,250,000.00 |
| Second City Taxi Corp. | $1,250,000.00 |
| Stoli Cab Co. | $1,250,000.00 |
| West End Taxi Corp. | $2,000,000.00 |
| York Avenue Taxi Corp. | $   719,881.76 |

6.     Each of the Loans was memorialized by a promissory note (as amended, restated, supplemented, or otherwise modified, a "Note" and collectively herein, the "Notes").

7.     Each of the Notes provided that in exchange for the Lender providing a Loan to each Borrower, each Borrower would, following the inception date of each Loan, pay the Lender monthly payments of interest and principal on respective dates specified therein.

8.     Contemporaneously with entering into the Notes, each of the Guarantors, in their individual capacities, entered into guaranty of payment agreements, pursuant to which each Guarantor irrevocably and unconditionally guaranteed to the Lender payment of all amounts due under each of the Notes (as amended, restated, supplemented, or otherwise modified, a "Guaranty Agreement" and collectively herein, the "Guaranty Agreements").

9.     The Guarantors are the principal owners/shareholders of each Borrower, with Yasya serving as the President and the Secretary of each Borrower.

10.     Each of the Loans is secured by, among other things, a separate pledge agreement between each Borrower and the Lender (as amended, restated, supplemented or otherwise modified, a "Pledge Agreement" or collectively herein, the "Pledge Agreements"), and a separate security agreement between each Borrower and the Lender (as amended, restated, supplemented, or otherwise modified, a "Security Agreement" and collectively herein, the "Security Agreements").

11.     Pursuant to the Notes, the Security Agreements, the Guaranty Agreements, and the Pledge Agreements, among other related documents, and as security for each Borrower's obligations pursuant to the Notes, including but not limited to the Borrowers' obligations to make the required monthly payments, each Borrower pledged the following taxi medallions to the Lender as collateral:

| Borrower | City of Chicago Taxi Medallion Numbers |
|---|---|
| 2nd Avenue Taxi Corp. | 1672, 1678, 2804, 3035, 4407, 4725, 5041 |
| 3 Angels Cab Corp. | 3241, 3438, 4291, 4633, 4973, 4989 |
| 3rd Avenue Taxi Corp. | 2190, 2277, 2802, 3801, 4766, 4789, 5455 |
| 6th Avenue Taxi Corp. | 851, 1660, 2923, 3410, 3463, 5209 |
| 7th Avenue Taxi Corp. | 996, 1456, 3223, 4347, 4388, 5992 |
| 8th Avenue Taxi Corp. | 328, 969, 1136, 3374, 4238, 6756 |
| 9th Avenue Taxi Corp. | 647, 1090, 3310, 5252, 5529, 5646, 5945 |
| Ashland Avenue Taxi Corp. | 3683, 5682, 6016, 6930 |
| Aspire Cab Corp. | 3376, 4947, 4972, 6504 |

| Borrower | City of Chicago Taxi Medallion Numbers |
|---|---|
| Carroll Avenue Taxi Corp. | 83, 4302, 6656 |
| Empire Taxi Incorporated | 3955, 4867, 5220, 6592, 6593, 6594, 6678, 6679 |
| Grey Goose Cab Co. | 2961, 2964, 2967, 2970, 3002 |
| Handy Cab Taxi Corp. | 4139, 403 |
| Lexington Taxi Corp. | 2542, 3098, 3584, 6051, 6142 |
| Madison Taxi Corp. | 802, 2083, 2729, 5968, 5969 |
| Monsoon Taxi Corp. | 201, 938, 4333, 4410, 4938 |
| Riverside Taxi Corp. | 882, 5055, 5148, 6901 |
| Sam & Sons Taxi Corp. | 592, 2799, 2813, 2936, 5548 |
| Second City Taxi Corp. | 936, 3307, 4937, 6038, 6141 |
| Stoli Cab Co. | 2962, 3012, 3013, 3031, 3032 |
| West End Taxi Corp. | 1803, 2055, 2745, 2753, 2756, 3680, 4064, 6177 |
| York Avenue Taxi Corp. | 6345, 3199, 6605 |

(collectively herein, the "Medallions").

12.     In addition, each Borrower and each Guarantor executed Affidavits for Judgment by Confession (each an "Affidavit of Judgment by Confession," and collectively herein, the "Affidavits of Judgment by Confession," and collectively with the Notes, the Security Agreements, the Guaranty Agreements, and the Pledge Agreements, the "Loan Documents"), pursuant to which each Defendant confessed judgment and agreed to the entry of a judgment in favor of the Lender and against, jointly and severally, each Borrower and the Guarantors, in the total amount due under each respective Note.

13.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and 2nd Avenue are attached and incorporated hereto as Group Exhibit 1.

14.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and 3 Angles are attached and incorporated hereto as Group Exhibit 2.

5

15.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and 3rd Avenue are attached and incorporated hereto as Group Exhibit 3.

16.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and 6th Avenue are attached and incorporated hereto as Group Exhibit 4.

17.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and 7th Avenue are attached and incorporated hereto as Group Exhibit 5.

18.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and 8th Avenue are attached and incorporated hereto as Group Exhibit 6.

19.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and 9th Avenue are attached and incorporated hereto as Group Exhibit 7.

20.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to

Loan Documents between the Lender and Ashland Avenue are attached and incorporated hereto as Group Exhibit 8.

21.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Aspire are attached and incorporated hereto as Group Exhibit 9.

22.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Carrol Avenue are attached and incorporated hereto as Group Exhibit 10.

23.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Empire are attached and incorporated hereto as Group Exhibit 11.

24.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Grey Goose are attached and incorporated hereto as Group Exhibit 12.

25.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Handy Cab are attached and incorporated hereto as Group Exhibit 13.

26.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Lexington are attached and incorporated hereto as Group Exhibit 14.

27.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Madison are attached and incorporated hereto as Group Exhibit 15.

28.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Monsoon are attached and incorporated hereto as Group Exhibit 16.

29.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Riverside are attached and incorporated hereto as Group Exhibit 17.

30.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Sam & Sons are attached and incorporated hereto as Group Exhibit 18.

31.     A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to

Loan Documents between the Lender and Second City are attached and incorporated hereto as Group Exhibit 19.

32. A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and Stoli are attached and incorporated hereto as Group Exhibit 20.

33. A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and West End are attached and incorporated hereto as Group Exhibit 21.

34. A true and correct copy of the Note, Security Agreement, Loan Guaranty, Pledge Agreement, Affidavit of Judgment by Confession, Rider to Loan Documents, and Schedules to Loan Documents between the Lender and York are attached and incorporated hereto as Group Exhibit 22.

35. The Borrowers defaulted under their respective obligations to the Lender under the Loan Documents by, among other things, failing to make the required payments due in the months of August 2016, September 2016, October 2016, and November 2016 (the "2016 Events of Default") on each of the Notes.

36. As a result of the Borrowers default under the Loan Documents, the Lender accelerated and declared immediately due and payable all of the Borrowers' respective obligations under the Loan Documents.

37.     In addition, the Lender filed an action against the Borrowers and the Guarantors in the case captioned, *Signature Financial LLC v. Shtayner, et al.*, Case No. 16-cv-10155, in the United States District Court for the Norther District of Illinois (the "2016 Lawsuit").

38.     Thereafter, the Borrowers and the Guarantors requested that the Lender (i) waive the 2016 Events of Default; (ii) dismiss the Lender's claims against the Borrowers and the Guarantors in the 2016 Lawsuit; (iii) de-accelerate the amounts due and owing under the Notes; and, among other things, (iv) reinstate the Notes and the other Loan Documents to allow the Borrowers and the Guarantors to comply with their payment and performance obligations thereunder.

39.     While under no obligation to do so, on November 26, 2016, the Lender and the Defendants entered into that certain agreement (the "De-Acceleration Agreement"), whereby the Lender, among other things, de-accelerated the amounts due and owing under the Notes and reinstated same and dismissed the 2016 Lawsuit in exchange for the Borrowers' and the Guarantors' full and complete compliance with and fulfillment of certain terms and conditions set forth in the De-Acceleration Agreement.

40.     A true and correct copy of the De-Acceleration Agreement is attached and incorporated hereto as Exhibit 23.

41.     In connection with the De-Acceleration Agreement, on or about April 30, 2017, each Borrower executed an amendment to the Notes (as amended, restated, supplemented, or otherwise modified, a "First Amendment to Promissory Note" and collectively herein, the "First Amendments to the Promissory Notes"), whereby each Borrower agreed to pay to the Lender certain monthly payments as set forth therein, with the Notes maturing on September 1, 2018.

10

42. True and correct copies of the First Amendment to Promissory Note between Lender and each Borrower, dated as of April 30, 2017, are collectively attached and incorporated hereto as Group Exhibit 24.

43. In 2018, the Borrowers and the Guarantors defaulted on their respective obligations to the Lender under the Loan Documents and the First Amendments to the Promissory Notes by, among other things, failing to make the required monthly payments when due thereunder.

44. Particularly, the Borrowers failed to make the required monthly installment payments under the Loan Documents and the First Amendments to the Promissory Notes for each of the Loans as follows (each a "2018 Event of Default,", and collectively, the "2018 Events of Default"):

| Borrower | Date of Last Payment |
|---|---|
| 2nd Avenue Taxi Corp. | February 1, 2018 |
| 3 Angels Cab Corp. | February 1, 2018 |
| 3rd Avenue Taxi Corp. | February 1, 2018 |
| 6th Avenue Taxi Corp. | February 1, 2018 |
| 7th Avenue Taxi Corp. | February 1, 2018 |
| 8th Avenue Taxi Corp. | February 1, 2018 |
| 9th Avenue Taxi Corp. | February 1, 2018 |
| Ashland Avenue Taxi Corp. | February 1, 2018 |
| Aspire Cab Corp. | March 5, 2018 |
| Carroll Avenue Taxi Corp. | February 5, 2018 |
| Empire Taxi Incorporated | January 5, 2018 |
| Grey Goose Cab Co. | February 5, 2018 |
| Handy Cab Taxi Corp. | February 5, 2018 |
| Lexington Taxi Corp. | January 5, 2018 |
| Madison Taxi Corp. | January 5, 2018 |
| Monsoon Taxi Corp. | January 10, 2018 |
| Riverside Taxi Corp. | February 10, 2018 |
| Sam & Sons Taxi Corp. | February 10, 2018 |
| Second City Taxi Corp. | February 10, 2018 |
| Stoli Cab Co. | February 10, 2018 |
| West End Taxi Corp. | December 10, 2017 |
| York Avenue Taxi Corp. | February 10, 2018 |

45.     On May 25, 2018, the Lender notified the Borrowers and the Guarantors in writing (the "Notice of Default") that their failure to make the required monthly payments constituted an Event of Default (as defined therein) under the Loan Documents and the First Amendments to the Promissory Notes.

46.     The Notice of Default further advised that, as a result of the 2018 Events of Default, the Lender had elected to accelerate the total amount due for each of the Loans, and demanded that the total amount due for each Loan be paid to the Lender by June 24, 2018.

47.     43.     A true and correct copy of the Notice of Default is attached and incorporated hereto as Exhibit 25.

48.     Neither the Borrowers nor the Guarantors paid the outstanding amounts due for any of Loans by June 24, 2018.

49.     As of July 3, 2018, the total amount of past due principal, accrued interest, and late fees due under each Loan is no less than as follows[1]:

| Borrower | Amount Due |
| --- | --- |
| 2nd Avenue Taxi Corp. | $1,757,669.00 |
| 3 Angels Cab Corp. | $1,504,452.70 |
| 3rd Avenue Taxi Corp. | $1,757,699.00 |
| 6th Avenue Taxi Corp. | $1,504,452.70 |
| 7th Avenue Taxi Corp. | $1,504,452.80 |
| 8th Avenue Taxi Corp. | $1,504,452.70 |
| 9th Avenue Taxi Corp. | $1,757,699.00 |
| Ashland Avenue Taxi Corp. | $1,000,803.98 |
| Aspire Cab Corp. | $ 998,203.59 |
| Carroll Avenue Taxi Corp. | $ 748,779.65 |
| Empire Taxi Incorporated | $2,011,501.78 |
| Grey Goose Cab Co. | $1,252,295.44 |
| Handy Cab Taxi Corp. | $ 476,802.02 |
| Lexington Taxi Corp. | $1,254,830.64 |
| Madison Taxi Corp. | $1,254,830.64 |
| Monsoon Taxi Corp. | $1,254,276.90 |

---

[1] These amounts do not include late fees or the Lender's reasonable attorneys' fees and collection costs, which are contractually recoverable under the Loan Documents.

| Borrower | Amount Due |
|---|---|
| Riverside Taxi Corp. | $1,000,103.75 |
| Sam & Sons Taxi Corp. | $1,251,741.71 |
| Second City Taxi Corp. | $1,251,741.71 |
| Stoli Cab Co. | $1,251,741.71 |
| West End Taxi Corp. | $2,014,371.16 |
| York Avenue Taxi Corp. | $  717,388.83 |

50.     As such, as of July 3, 2018, the total aggregate amount of past due principal, unpaid interest and late fees owed by each Guarantor, jointly and severally, pursuant to the Guaranty Agreements is no less than $29,030,291.41, exclusive of continuing interest, certain costs, fees and expenses, including, without limitation, attorneys' fees and costs (the "Total Indebtedness").

51.     To date, no Borrower has paid any portion of the amount due under any Loan, and the Guarantors have not paid any portion of the Total Indebtedness.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 20 , 2018.


                                    _____
                                    David McGowan

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SIGNATURE FINANCIAL LLC, | |
| Plaintiff, | |
| v. | No. 1:18-cv-04676 |
| YASYA SHTAYNER, SEMYON SHTAYNER, 2ND AVENUE TAXI CORP., 3 ANGELS CAB CORP., 3RD AVENUE TAXI CORP., 6TH AVENUE TAXI CORP., 7TH AVENUE TAXI CORP., 8TH AVENUE TAXI CORP., 9TH AVENUE TAXI CORP., ASHLAND AVENUE TAXI CORP., ASPIRE CAB CORP., CARROLL AVENUE TAXI CORP., EMPIRE TAXI INCORPORATED, GREY GOOSE CAB CO., HANDY CAB TAXI CORP., LEXINGTON TAXI CORP., MADISON TAXI CORP., MONSOON TAXI CORP., RIVERSIDE TAXI CORP., SAM & SONS TAXI CORP., SECOND CITY TAXI CORP., STOLI CAB CO., WEST END TAXI CORP., and YORK AVENUE TAXI CORP., | JUDGE: Hon. Gary Feinerman MAGISTRATE: Hon. David Weisman |
| Defendants. | |

## DECLARATION OF MITCHELL D. COHEN, ESQ.

I, **Mitchell D. Cohen, Esq.**, in support of the application of plaintiff Signature Financial LLC ("Signature," "Plaintiff," or the "Lender") for an Order granting summary judgment in favor of the Lender and against the defendants (collectively herein, the "Defendants") in the above-captioned action (the "Action"), declare as follows:

1.  I am a member of the Bar of the States of New York and New Jersey and a Shareholder of the law firm of Vedder Price LLP ("Vedder Price"), counsel for the Lender in the Action. I, along with my colleague, Michael R. Mulcahy, Esq., am responsible for providing the legal services in connection with the filing of the Complaint and the recovery of the amounts due and owing the Lender by the Defendants in the Action.

1

2.     I have been practicing law for over seventeen years. I regularly represent Signature, and my practice focuses primarily on commercial litigation and creditors' rights.

3.     I submit this Declaration in support of an award of attorneys' fees and costs in favor of the Lender pursuant to those certain loan documents and related guaranties executed by the Defendants.

4.     I make these statements based on my own personal knowledge and review of the relevant files and documents and would so testify if called as a witness at trial.

5.     I have knowledge of the hours spent by myself on behalf of the Lender, and of the books and records of such hours kept by Vedder Price and prepared in the ordinary course of business. It is the regular practice of the attorneys at Vedder Price to record the time spent and services rendered in such records.

6.     My average discounted hourly billing rate in this case is $440. The average billing rate for the other attorneys on this case ranges from $365 - $460.

7.     Vedder Price bills the Lender at Vedder Price's standard hourly rates, and Vedder Price's standard hourly rates are billed in tenths of an hour. Attached hereto as **Exhibit 1** is a billing summary which summarizes the legal fees and expenses charged to the Lender in connection with this matter.

8.     I have reviewed the billing statement attached hereto and all of the fees Vedder Price charged to the Lender in this case relate to obtaining a judgment against the Defendants, which was necessitated by the Defendant's default under the subject loan documents and related guaranties.

9.     In connection with the Action, Vedder Price has rendered professional services on the Lender's behalf in the amount of than Forty-Six Thousand Four Hundred and Ninety-Seven Dollars ($46,497.00). The Lender also incurred Six Thousand Seven Hundred Eighty-Eighty Dollars and Sixty-Nine Cents ($6,788.69) for expenses in connection with the services rendered by Vedder Price, for a total amount of Fifty-Three Thousand Two Hundred Eighty-Five Dollars and Sixty-Nine Cents ($53,285.69).

10.     It is my opinion that the fees and expenses charged for services rendered in this case are reasonable, necessary, usual and customary attorneys' fees for this work performed.

I declare under penalty of perjury under the laws of the United States, the State of New York and the State of Illinois that the foregoing is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 19, 2018.

_____
Mitchell D. Cohen

# EXHIBIT 1

*ATTORNEYS FEES*

## ATTORNEYS FEES

| | | | |
|---|---|---|---|
| COHEN, M. | 440 | 14.4 | 6,336.00 |
| MULCAHY, M. | 440 | 73.7 | 32428 |
| WARE, F.L. | 460 | 15.7 | 7,222.00 |
| ETZEL, K.J. | 365 | 1.4 | 511.00 * |

| GRAND TOTAL: | | 46,497.00 |
|---|---|---|

**COSTS**          6,788.69

**TOTAL:**          <u>53,285.69</u>