UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SIGNATURE FINANCIAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 4676 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| YASYA SHTAYNER, SEMYON SHTAYNER, 2ND AVENUE TAXI CORP., 3 ANGELS CAB CORP., 3RD AVENUE TAXI CORP., 6TH AVENUE TAXI CORP., 7TH AVENUE TAXI CORP., 8TH AVENUE TAXI CORP., 9TH AVENUE TAXI CORP., ASHLAND AVENUE TAXI CORP., ASPIRE CAB CORP., CARROLL AVENUE TAXI CORP., EMPIRE TAXI INCORPORATED, GREY GOOSE CAB CO., HANDY CAB TAXI CORP., LEXINGTON TAXI CORP., MADISON TAXI CORP., MONSOON TAXI CORP., RIVERSIDE TAXI CORP., SAM & SONS TAXI CORP., SECOND CITY TAXI CORP., STOLI CAB CO., WEST END TAXI CORP., and YORK AVENUE TAXI CORP., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In August 2019, the court entered a $28.3 million judgment for Signature Financial LLC against Semyon Shtayner, Yasya Shtayner, and numerous corporations of which they are the principal shareholders. Docs. 92-93. Attempting to collect on the judgment, Signature issued citations to discover assets on the Shtayners, Docs. 104, 146, and served them with post-judgment interrogatories and requests for production, Docs. 105-2, 105-3. The Shtayners produced certain responsive documents regarding their and the corporate defendants' assets, Doc. 105-5; Doc. 185 at ¶ 12, and appeared for a series of depositions, Docs. 185-2, 185-3, 185-8, 185-10. On Signature's motion, the court ordered the turnover of certain debtor assets and

1

imposed a charging lien on the Shtayners' interests in various limited liability companies. Docs. 149, 180, 183. The judgment, however, remains unsatisfied. Doc. 185 at ¶ 10.

Now before the court is Signature's motion for sanctions and to compel post-judgment discovery. Doc. 185. The motion asks the court to: (1) compel the Shtayners to comply with their post-judgment discovery obligations; (2) hold them in contempt for the failure to comply thus far; and (3) sanction them and their counsel, Ariel Weissberg, by holding them jointly responsible for the fees and costs Signature has incurred in connection with this motion. The motion is granted in part and denied in part.

## Background

In September 2019, Signature served the Shtayners with post-judgment interrogatories and requests for production. Doc. 185 at ¶ 11; Docs. 105-2, 105-3. Two months later, Signature served the Shtayners with citations to discover assets. Doc. 104. Following a motion to compel, Doc. 105, the court ordered the Shtayners to sit for depositions in December 2019, Doc. 111. The Shtayners' former counsel Johnson & Bell, Ltd. represented them at those depositions. Doc. 185 at ¶ 15; Docs. 185-2, 185-3.

Signature correctly contends that the Shtayners at their December 2019 depositions repeatedly "failed to recall" answers to questions within their knowledge and identified documents in their possession that they had failed to produce. Doc. 185 at ¶¶ 17, 20; *see*, *e.g.*, Docs. 185-2 at 7, 14, 18 (18:19-24, 44:20-46:14, 62:3-22); Doc. 185-3 at 21-22, 25, 26-27 (76:18-77:7, 90:18-91:23, 96:20-97:12). The court reporter left blanks in the deposition transcripts for the Shtayners to fill in after they refreshed their recollections. *E.g.*, Doc. 185-2 at 14, 18 (46:12-14, 62:20-22); Doc. 185-3 at 7, 8 (17:9-11, 22:18-20, 24:9-11). Semyon and Yasya did not object to filling in those blanks and producing those documents.

Signature conferred with the Shtayners' then-counsel at Johnson & Bell to obtain the missing documents and information. Doc. 185 at ¶ 22. Those communications ended when Johnson & Bell withdrew in late January 2020. Doc. 119. The next month, the Shtayners' current counsel, Ariel Weissberg, appeared on their behalf. Doc. 132.

In May 2020, Signature served the Shtayners with properly composed citations to discover assets. Doc. 146; *see* Docs. 142-143 (reported at __ F.R.D. __, 2020 WL 2041347 (N.D. Ill. Apr. 28, 2020)). The court ordered the Shtayners to sit for their citation depositions on or before June 29, 2020. Doc. 156. That deadline was not met, and the Shtayners ultimately agreed to set Semyon's deposition for July 27, 2020. Doc. 185 at ¶¶ 28-30; Doc. 185-6. In advance of that date, Signature sent Weissberg two letters seeking the missing documents and information from the December 2019 depositions. Docs. 185-4, 185-5. Weissberg agreed to that request. Doc. 185-7.

The Shtayners did not produce the documents or information before Semyon's July 2020 deposition. Doc. 185 at ¶ 35. During that deposition, Semyon again failed to answer numerous questions within his knowledge and again identified responsive documents he had failed to produce. *Id*. at ¶ 38; *see*, *e.g.*, Doc. 185-8 at 13, 19, 22 (46:19-48:6, 71:2-13, 82:14-84:5). After three hours, the deposition was continued to September 10, 2020 because Semyon was feeling unwell. Doc. 185 at ¶ 39; Doc. 185-8 at 23 (85:17-20). Semyon was later diagnosed with COVID-19. Doc. 189 at ¶ 17.

On September 9, Signature sent Weissberg a copy of Semyon's July 2020 deposition transcript and asked counsel to review it with Semyon and provide the missing information and documents. Doc. 185-9. The information was not provided. Doc. 185 at ¶ 41. Also on September 9, Signature's counsel and Weissberg conferred by phone. Doc. 185 at ¶ 43; Doc.

3

189 at ¶ 19. The parties dispute what happened on the call. Signature asserts that Weissberg stated that he had instructed Semyon to answer "I don't recall" to questions at the upcoming deposition. Doc. 186 at ¶ 15. Weissberg denies that charge, averring that he "never coached Semyon to have a faulty recollection in response to any questions posed under oath by Signature." Doc. 189-1 at ¶ 4.E.

At his deposition the following day, Semyon confirmed that he had promised to produce certain documents and fill in his prior deposition transcript with information that he needed to "go back and look further for," and admitted that he had not done so. Doc. 185 at ¶ 42; Doc. 185-10 at 3 (7:7-22). By Signature's estimate, Semyon answered "I don't recall" more than 100 times in response to "questions which were simple in nature." Doc. 185 at ¶¶ 47-50. It highlights three lines of questioning to illustrate the point. *Id.* at ¶¶ 51-60.

First, Signature points to Semyon's responses to questions about a $25,000 gift he had recently received from his mother. *Id.* at ¶¶ 51-54. The pertinent testimony is as follows:

> Q: All right. What date did she give you the cash?
>
> A: I don't recall.
>
> Q: Well, it was a pretty large sum of money, wasn't it, Mr. Shtayner?
>
> A: Yes.
>
> Q: And what month was it in?
>
> A: I don't recall.
>
> …
>
> Q: And how did she send you the $25,000 in cash?
>
> A: She just handed me the $25,000 when I came to her apartment.
>
> Q: And where did you put it?
>
> A: Put it in my pocket.

4

> Q: What size bills were they?
>
> A: I don't recall.
>
> Q: Your mother gave you 25,000 in cash and you don't know what size bills they were? Were they singles?
>
> A: I don't recall.
>
> Q: Is there a reason why you don't recall from about a month ago how your mother gave you $25,000 in cash?
>
> A: I just don't recall.
>
> Q: And when you put it in your pocket, was it one pocket?
>
> A: I don't recall.
>
> Q: What kind of pants were you wearing? Cargo pants?
>
> A: I don't recall what I was wearing on that day.
>
> …
>
> Q: Where did you spend the money?
>
> A: I don't recall.
>
> Q: Can you tell me any place where you spent the money?
>
> A: I don't recall.

Doc. 185-10 at 4, 6 (9:4-11, 11:8-25, 12:1-4, 17:5-9).

    Second, Signature points to Semyon's failure to recall various dealings with and payments made to his attorneys. Doc. 185 at ¶¶ 55-57. Signature asked Semyon how he paid his counsel, Mitrani & Reinor, in connection with a settlement concerning a $4,500,000 mortgage on his Miami penthouse condominium. Doc. 185-10 at 9-11 (32:23-37:4). Although Semyon acknowledged signing an engagement letter with that firm, he "did not recall" the amount of the retainer fee, who paid it or how it was paid, and whether he had spent "more than a dollar" on legal fees in connection with the representation. *Id*. at 10 (33:17-36:13). Signature also asked

5

about Semyon's payments to Weissberg for his representation in this case. *Id*. at 11 (37:21-39:11). Semyon "did not recall" if he had ever paid Weissberg's legal fees, who had paid them and how, whether he had an engagement letter or retainer, or when Weissberg represented him for the first time. *Ibid*.

Third, Signature points to Semyon's responses concerning his Nevada-based cannabis business—Cannaboss, LLC—in which he has invested over $4,000,000. Doc. 185 at ¶¶ 58-59; Doc. 185-10 at 13 (46:2-5). Semyon "did not recall" why certain liens were filed against Cannaboss and the amount of those liens, Doc. 185-10 at 13 (46:8-25, 47:1-24); if there were any Uniform Commercial Code liens against the business, *ibid*. (45:25-46:1); how long the business's only two employees had been employed or whether they had been paid in the last two months, *id*. at 16 (58:2-60:24); and how Semyon obtained the money to pay those employees, *id*. at 17 (61:22-23).

At one point during the deposition, Signature's counsel asked Semyon: "Mr. Shtayner, are you aware yesterday that your attorney, Mr. Weissberg, said to me on the telephone that he has instructed you to answer 'I don't recall' to questions that I ask you?" *Id*. at 6 (18:12-15). Semyon answered that he did not "know what [Weissberg] advised [Signature's counsel] about." *Ibid*. (19:10). And Weissberg reiterated his denial that he had coached Semyon to have a faulty recollection. *Id*. at 6-7 (20:13-21:3).

**Discussion**

Signature seeks relief against the Shtayners and Weissberg under Civil Rule 37. Doc. 185 at ¶¶ 62-64; Doc. 193 at ¶¶ 24-27. At the end of their opposition brief, the Shtayners briefly argue that this motion is governed not by Civil Rule 37, but rather by Illinois Supreme Court Rule 277 and 735 ILCS 5/2-1402, as incorporated by Civil Rule 69. Doc. 189 at ¶ 26. The

6

Shtayners' argument is unpersuasive. Civil Rule 69(a)(2) states that, "in aid of the judgment or execution, the judgment creditor … may obtain discovery from any person—including the judgment debtor—as provided in these rules *or* by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2) (emphasis added); *see* Fed. R. Civ. P. 69, advisory committee's note to 1970 amendment ("The amendment assures that, in aid of execution on a judgment, all discovery procedures provided in the rules are available … ."); *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 795 (7th Cir. 2011) (citing Rule 69(a)(2) for the proposition that "discovery requests in aid of execution may be made pursuant to either the federal rules or the corresponding rules of the forum state"); *JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp. Tbk*, 854 F. Supp. 2d 528, 536 (N.D. Ill. 2012) (applying Civil Rule 37 in a citation proceeding brought under 735 ILCS 5/2-1402). Moreover, the Shtayners do not assert, let alone show, that the obligations imposed and remedies allowed by Rule 37, on the one hand, and Illinois law, on the other, differ in any material way. Accordingly, the court will apply Rule 37.

I.      **Missing Documents and Information**

Rule 37(a) permits a party to "move for an order compelling disclosure or discovery," provided that "the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). As pertinent here, a Rule 37(a) movant may seek: (1) an order "compelling an answer … if a deponent fails to answer a question asked under Rule 30 or 31," Fed. R. Civ. P. 37(a)(3)(B)(i); and (2) an order "compelling … production" if "a party fails to produce documents … as requested under Rule 34," Fed. R. Civ. P. 37(a)(3)(B)(iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Invoking Rule 37(a), Signature seeks to compel the

Shtayners: (1) to supplement their production with the documents that Semyon and Yasya admitted at their depositions that they had failed to produce; and (2) to answer the deposition questions that were within their knowledge but to which they feigned ignorance or lack of recall. Doc. 185 at ¶ 65-66; Doc. 193 at ¶ 11. Signature is entitled to that relief.

To start, Signature has shown that it has "in good faith" attempted to resolve the present discovery disputes. Fed. R. Civ. P. 37(a)(1). Signature has repeatedly asked the Shtayners to comply with their discovery obligations. Docs. 185-4, 185-5, 185-9. And the Shtayners have time and again failed to cooperate.

Signature correctly submits that the Shtayners promised to produce additional documents and to supplement their testimony with additional information. Doc. 185 at ¶¶ 15-23. Semyon admitted as much during his September 2020 deposition. Doc. 185-10 at 3 (7:7-22). He confirmed that he had "identified certain documents that were not produced" but still had not produced them. *Ibid*. (7:7-9). He also confirmed that he had previously "identified information that [he] said [he] needed to go back and look further for" but had not done so. *Ibid*. (7:14-22).

The Shtayners retort that they have already produced some of the documents demanded by Signature, that other documents are not within their possession or control, and that much of the documents that remain "will not lead to the discovery of any [attachable] assets." Doc. 189 at ¶¶ 23-25. The argument misses the mark. Whether the Shtayners' documents will ultimately prove useful to Signature obviously is not their call. And although the Shtayners cannot be compelled to duplicate their prior productions or produce documents not in their possession or control, they can be compelled to find and produce as-yet-unproduced documents that they admitted are in their possession or control.

Signature is likewise correct to maintain that Semyon gave "intentionally evasive testimony" at his depositions by repeatedly responding "I don't recall" to simple questions plainly within his ken. Doc. 185 at ¶¶ 50, 61. The Shtayners respond that, at least as to the September 2020 deposition, Semyon's "less than total recall" was "quite understandable" given his COVID-19 diagnosis and mother's recent death. Doc. 189 at ¶ 22. Even accounting for these circumstances, it is not credible that Semyon was unable to recall basic facts about his personal affairs—for example, where he gets the cash to pay the employees of his multimillion dollar cannabis venture, Doc. 185-10 at 17 (61:22-23); whether he paid his lawyers "more than a dollar" in connection with a settlement pertaining to his multimillion dollar primary residence, *id*. at 10 (36:8-9); and how and where he spent a $25,000 cash gift that he had just received from his mother, *id*. at 6 (17:5-9). Given the "evasive" nature of Semyon's responses, Fed. R. Civ. P. 37(a)(4), he must sit for another deposition at which he must be prepared to answer those questions, as well as others that Signature identified from his prior depositions that he (through counsel) agreed to substantively answer. And while Yasya's failures of memory are not as egregious as Semyon's, she, too, must produce any as-yet-produced documents that she admitted were in her possession or control, and also must answer the questions that she failed to answer at her December 2019 deposition but that she later (through counsel) agreed to answer.

**II.  Contempt**

Signature asks the court to hold the Shtayners in contempt and order their arrest to ensure their compliance with the court's orders and to impress upon them the seriousness of their discovery obligations. Doc. 185 at ¶¶ 71-83. Considering the Shtayners' obstreperous and evasive conduct to this point, Signature's request is not unreasonable. *See Am. River Transp. Co. v. Ryan*, 579 F.3d 820, 826 (7th Cir. 2009) ("A civil contempt order is designed to compel

obedience to a court order or to compensate the contemnor's adversary for the injuries which result from the noncompliance.") (internal quotation marks omitted). That said, the court will afford the Shtayners one final opportunity to comply with their discovery obligations. They should not expect similar forbearance from the court if they do not take advantage of this final opportunity to comply.

### III.   Attorney Fees

Upon granting a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). "But the court must not order payment if (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Ibid.* None of the exceptions applies here, as Signature attempted in good faith to obtain the pertinent documents and information without court action, the Shtayners' persistent nondisclosures were not substantially justified, and there are no other circumstances that would make unjust a fee and expense award. Accordingly, Signature is entitled to recover the fees and expenses it incurred in preparing and litigating the present motion. *See Stephens v. Baker & McKenzie LLP*, 769 F. App'x 362, 365 (7th Cir. 2019) (citing Rule 37(a)(5)(A) in affirming "the district court's decision to grant [the defendant's] petition for attorneys' fees as a sanction for [the plaintiff's] refusal to comply with discovery").

Signature argues that the fee award should be entered against the Shtayners and Weissberg, jointly and severally. Doc. 185 at ¶ 88; Doc. 193 at ¶ 28. As for Weissberg, Signature submits that he intentionally frustrated Semyon's September 2020 deposition by

instructing him to answer "I don't recall" even if he knew the answers to Signature's questions. Doc. 185 at ¶¶ 85-86; *see* Fed. R. Civ. P. 30(d)(2) (permitting imposition of sanctions, including an award of expenses and fees, against "a person who impedes, delays, or frustrates the fair examination of the deponent"). Signature's submission is unpersuasive on the present record. A lawyer may advise a client to answer "I don't know" or "I don't recall" to a question if, in fact, the client does not know or recall the information sought. And there is no evidence supporting Signature's view that Weissberg instructed Semyon to respond "I don't recall" to questions to which he knew the answer. Indeed, as Signature acknowledges, Doc. 185 at ¶ 17, Semyon repeatedly answered "I don't recall" at his December 2019 deposition, before Weissberg was his lawyer. *E.g.*, Doc. 185-3 at 26-27, 47, 58 (96:20-97:12, 177:19-178:10, 224:18-22). Given all this, the award of fees and costs will run against the Shtayners only.

## Conclusion

Signature's motion is granted in part and denied in part. The Shtayners shall produce the documents in question by December 4, 2020, and shall sit for continued depositions no later than December 18, 2020. (At its option, and in lieu of re-taking her deposition, Signature may simply require Yasya to provide in writing the information she did not provide at her December 2019 deposition.) The Shtayners must reimburse Signature for the reasonable attorney fees and costs it incurred in preparing and litigating this motion. By December 4, 2020, Signature shall file a memorandum, with invoices and any other pertinent evidentiary support, establishing its fees and costs. The Shtayners have until December 11, 2020 to respond, and Signature may reply by December 18, 2020.

November 23, 2020

_____
United States District Judge